Good morning. My name is Leonard Feldman, and with me at the Council table is Paul Rigani, and we represent the plaintiff, Appellant Jacob Barrett. I'd like to reserve three minutes for rebuttal and also point out that I handed to the Clerk before argument a manila folder that contains a brief from a previous case that I'd like to refer to in my argument today. Did you furnish it to opposing counsel? Yes, I gave that to her at about 8.30 this morning. Did she object to it or not? She did not indicate any objection. Unless the Court has specific questions, I'd like to briefly address two issues. The first relates to the U.S. Supreme Court's decision in Martinez, and the second relates to this Court's opinion in Bradley. With regard to Martinez, I think it's clear from the briefing that it is directly on point. It specifically deals with outgoing mail from prison institutions. It's subsequently been clarified and limited so that it only applies to outgoing mail from prison institutions. But that, of course, is exactly the case that we have here. The Martinez case mandates a two-part test. The first part is that the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. Defendants claim in this regard that the prison seeks to avoid conflict between staff and inmates as well as conflict among inmates. That's precisely the argument that the Supreme Court rejected in Martinez, and it doesn't make any sense, whereas here the letter is addressed to somebody outside of the penal institution. The second factor in Martinez is that the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of a particular governmental interest involved. Defendants offer no explanation as to why it's necessary to punish Mr. Baird or other inmates when they write offensive letters to people outside of the prison institution. With regard to Bradley, I'd like to preface my remarks by saying, of course, that Bradley is a grievance case, and this is an outgoing correspondence case. Nevertheless, we cited Bradley because it's the closest that the Ninth Circuit has come to addressing the specific issue that's presented here. The Bradley court adopted the test in Martinez and applied it or actually indicated that the same reasoning in Martinez would apply to grievances. And we agree with you. What should this court do? Your Honor, what we've asked for is essentially the same thing that the court did in Bradley. And, of course, Bradley involved the same ODOC regulations. We're asking this Court to do two things. One is to hold the defendant's conduct unconstitutional as applied to the specific letters that are at issue here. But secondly, to make clear, I think as this Court did in Bradley, that it is unlawful and unconstitutional for ODOC to be applying its regulations in this matter. Shouldn't those arguments be advanced to the district court? I mean, you're up here on a 12. This case got knocked down on a 12b-6, correct? It did. So the district court said there's no possible set of circumstances here that would entitle Mr. Barrett to relief. Right. But let me... So it seems to me that if you've stated a claim under Martinez, that it should just go back to the district court. Your Honor, I think that ignores the substantial body of law that has said that these issues can and should be decided as a matter of law. The Tarabashio case, for example, that we cited was a case, and this is the brief that I handed up to you, it's a case that involved ODOC. We believe that's... Now, at what stature were these cases? Were these cases that were dismissed on 12b? Because all we have here is a complaint, and all we need to say, if we agree with you, is he stated a claim. I think that's right. I think that's right, Your Honor. And that would be an easy way out of this case. But what I think it ignores is that what we have here is a very alarming disregard for this Court's case law. We saw that in Bradley, and we saw that in Tarabashio. Now, just to go back to your point, Your Honor, it wasn't a 12b-6 because there wasn't a motion filed. The district court just popped this out. Well, it was like a 12b. It was like a 12b. I think these prisoner claims, the district court can say that it's frivolous on its face. Right. But what happened in Tarabashio is that the district court there granted summary judgment in favor of the inmate. And, of course, this Court affirmed. And I think it is a very clear indication that these issues can be decided as a matter of law, and I don't think there's anything that would preclude this Court from doing so, so that we don't find ourselves... Well, maybe the State, you know, they'd like to add a little bit to the record, you know, a few affidavits or something. I don't know. It's possible, but I don't see how those affidavits would do anything. And if that's the State's... I don't know. Perhaps they would explain that today, because there's certainly nothing in the briefs. The principal argument in the brief is that Martinez is no longer good law, and we know that it is good law, and that Bradley is no longer good law. And the brief that I gave you in the Manila folder is the brief that ODLC filed in Tarabashio. They basically cut and pasted their argument from that case into this case. That's their argument. It's the same argument that they tried in Tarabashio and they lost. Typographical errors and all have been transferred over this case. And as I said, it's a very alarming and disturbing disregard for this Court's case law. And what we respectfully request is that this Court do something so that we don't find ourselves back here in another year or two making these same arguments. But there's not a categorical rule that says that under all circumstances, prisoners, outgoing mail is protected by the Constitution. I mean, you can imagine a case, for example, where it turns out that the letter from the inmate contains some kind of a code that has something to do with an uprising in the institution. Well, that would be a legitimate basis for imposing discipline or taking appropriate steps. We don't know. We don't know any of that. So we're not going to – we're not in a position to say there's a categorical prohibition against imposing discipline of outgoing mail. Well, I think you do know that, Your Honor. And the reason I say that is because – and I agree with you, first of all. Bradley made very clear, and other cases have as well, that if there are outgoing codes, if there's invitations for criminal conduct, that's not protected by the First Amendment. But what we have here is a disrespect regulation. He wasn't infracted or punished for sending out code. And he wasn't infracted or punished for sending out messages that are – that are soliciting criminal conduct. He was specifically punished and significantly punished for disrespectful remarks, for comments about the Aryan Brotherhood and for disobeying an order that, of course, we don't know about. So what we have in the record here is a very clear indication from ODOC that the only thing he did wrong was make these disrespectful remarks and these offhand references to an offensive organization. That's the record that we have. And that conduct on the complaint and on the record before this Court is clearly unlawful. Thank you. Roberts. Okay. We'll hear from the State. Good morning. May it please the Court. Janet Metcalf for the defendants. There are, I think, from our point of view, two aspects of this case that are significant. The first, we think, distinguishes this case from Martinez, Bradley, and the other cases on which the plaintiff relies, and that's the fact that this – this particular disrespect regulation, which is not the one that was at issue in Bradley and is not the one that was at issue in Taraboshia, has an additional element. And that additional element, which we think serves to tighten more elastic words such as abusive, which is used in the – in the rule that was at issue in Bradley, this regulation has a harassment element which restricts it to racial, religious, sexual, or a physical threat to the other person. So we think that that – that additional element serves to distinguish this case from the ones on which plaintiff relies. But doesn't Martinez protect correspondence that might include a racial slur? No. Well, in – well, let me, before I answer that, make sure that I'm answering it accurately. But there were two things in Martinez. One is that the rule certainly went beyond that. It went beyond that in the ways that the Court thought was too expansive and too broad. And the fact that in Martinez there was evidence that, in fact, prison officials had not – had really abused the way in which they had enforced the rule anyway, besides the breadth of the rule. So we think that those two factors distinguish this case from Martinez and the other cases on which plaintiff relies. The other thing – oh, and let me just, as a housekeeping measure, I don't object to plaintiffs submitting the brief in the other case. I have no problem with that at all. The other fact that we think is significant in this case, although admittedly this is a fact that is present in some of the other cases, is the fact that plaintiff knew that his mail would be read and that he admitted that in his other similar case. And I think what's significant about that is it's fine for plaintiff to say I wasn't directing this mail at prison staff. I was sending it to my grandmother. I was sending it to my mother. But the truth is, if in fact you know that someone on staff is going to open your letter and read it, in a very real sense you're directing it as them as well. You know they're going to read it. You know it's going to be seen by someone on staff. It's not as though you're directing it only to your grandmother or only to your mother. And we think that that's significant in terms of the risk that this kind of speech can create within the prison, the kind of tension. I don't think one needs a record to know that there is considerable tension between staff and inmates, and anything that exacerbates that tension is potentially bad for the institution and bad for everyone in it. 12b-6 is a pretty high standard. It is, Your Honor. And obviously All these issues should have been addressed in a summary judgment motion. And I find myself in an odd position because, frankly, to the extent that the plaintiff is criticizing us for not having shown a legitimate penological interest for having this rule and enforcing it, we would frankly be in a better position had we been able to make that record. Mr. Court did it on its own. Did it on its own. The prison litigation reform. And so in many ways I'm not really sure how much I want to stand up here and fight to win this case, because I think this is a better case for us if we are able to make that record and to put in affidavits from people in the institution who can explain why this rule exists at all, why it was enforced here. We also have the anomaly. Counsel says that the only rule at issue here is the Disrespect I rule, but that's not accurate. He was also disciplined for, and I've forgotten the name of the regulation, it's somewhat odd, but for blogging to an organization that the prison thinks is dangerous and also for disobedience of an order. And frankly, the plaintiff is quite right when plaintiff says, what order? We don't know. And again, I think that's because we weren't able to make a record. But that leaves us in a somewhat awkward position because we have absolutely no basis on which to evaluate that aspect of his discipline. Plaintiff says, well, I think maybe they thought I belonged to the Aryan soldiers and I don't. I belong to a national socialist. I may have some other groups that I belong to, but not that one. And again, the institution is in a position where it hasn't been able to make a record about what organization it thought he did belong to. But the time the district court entered its order here, have the defendants been served with the summons and complaint? Your Honor, I'm not certain. I know we had not taken any action in response to it. I'm inclined to think we had not been, but I don't want to affirmatively and confidently assert that because I'm practically not certain. But I think this was something that the court, the district court did just kind of out of the box and before anything else had happened. Frankly, Your Honors, I have time left. But unless you have additional questions, I think that's all I have. Thank you. No questions. Thank you. Your Honors, if I could just briefly address three points, the first of which is the issue of remand. The time for ODOC to say that this is a great case for them and they would have loved to decide it on summary judgment was probably about a year or two ago when this case was first appealed. The concept of justice delayed is justice denied is certainly apt here. This is a pro se, and he's been waiting for his day in court, and he finally has it. ODOC filed an opposition brief, and I think the issue is squarely before this court. On the issue of Martinez, the notion that Martinez can be distinguished because there's a harassment element here is, I think, patently frivolous. The reason for that being that harassment assumes that you're communicating with the person that you're harassing. That's what Black's Law Dictionary says. That's what common sense confirms. It's interesting, getting a little bit ahead of myself here on the issue of he knew that his letters would be read. He knew that his letters would be read by the mail clerk. He did not know that his letters would be read by the people that he was commenting about. The interesting thing there is that in Loggins and McNamara, the letters were specifically written to and about the folks in the mailroom. And even those courts had no difficulty at all finding that that conduct, punishing somebody for making statements directly to the mailroom clerk in outgoing correspondence, was unlawful. So this notion that he knew, I think, is also frivolous. Counsel indicated that there is evidence in Martinez that the defendants had abused the regulation. I'm not sure how else to describe the record that we have here. I mean, the Court in Bradley told ODOC it was unlawfully applying its disrespect regulations. ODOC argued that Bradley was no longer good law in Tarabashio, and the Court there said, once again, you're unlawfully applying your disrespect regulation. I had a moment to confirm when I was at the counsel table that Bradley, like Tarabashio, is a summary judgment case. They were both decided as a matter of law. And that's what we're asking this Court to do as well. Thank you. Thank you. I appreciate your arguments. The matter is submitted. It's our next case for argument.
judges: Fletcher, Paez, Schwarzer